Case 4:20-cv-01278-BSM   Document 2   Filed 10/26/20   Page 1 of 19

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2020-Oct-26  10:48:46
60CV-20-5954
C06D09 : 15 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
_____ DIVISION

MARQUISA WINCE and                                          PLAINTIFFS
MARY CANTWELL

v.                         Case No. _____

JOHN THURSTON, in his official capacity as
the Secretary of State of Arkansas and his
official capacity as Chairman of the Arkansas
State Board of Election Commissioners;
SHARON BROOKS, in her official capacity
as a member of the Arkansas State Board of
Election Commissioners; JAMES HARMON
SMITH, III, in his official capacity as a
member of the Arkansas State Board of
Election Commissioners; BILENDA
HARRIS-RITTER, in her official capacity as a
member of the Arkansas State Board of
Election Commissioners; CHARLES
ROBERTS, in his official capacity as a
member of the Arkansas State Board of
Election Commissioners; WILLIAM
LUTHER, in his official capacity as a member
of the Arkansas State Board of Election
Commissioners; and JAMES SHARP, in his
official capacity as a member of the Arkansas
State Board of Election Commissioners                       DEFENDANTS

## COMPLAINT

1.  Arkansas law gives election officials less than eleven hours to count absentee ballots. They cannot begin counting until election day and must finish before the polls close at 7:30 that night. It is impossible for these officials to meet this arbitrary deadline. That is particularly true in the upcoming election, where county clerks across Arkansas received more than 70,000 absentee ballots with two weeks still to go until election day, already more than double the total of all absentee ballots cast in the 2016 general election.

2. Plaintiffs Marquisa Wince and Mary Cantwell are qualified absentee voters who complied with every law, rule, and regulation related to absentee voting. Like thousands of Arkansans, they are voting absentee due to health concerns related to the COVID-19 pandemic.

3. Ms. Wince and Ms. Cantwell bring this action for a single, limited purpose: they want their votes to be counted. They ask that this Court enter a preliminary injunction prohibiting election officials from refusing to continue counting absentee ballots after the polls close at 7:30 p.m. on November 3, 2020. They also seek declaratory relief and a permanent injunction.

## PARTIES, VENUE, AND JURISDICTION

4. Plaintiff Marquisa Wince is a citizen of Arkansas with her primary residence in Pulaski County. Ms. Wince is a graduate student pursuing a law degree at the University of Arkansas at Little Rock William H. Bowen School of Law and a masters' degree in public service at the Clinton School. Ms. Wince is active in a number of multiple student groups. She also works part-time. Between both university campuses, her job, and her extracurricular student activities, Ms. Wince regularly interacts with hundreds of individuals—faculty members, staff, other students, and colleagues. Ms. Wince voted absentee in the 2020 general election because she is concerned about the ongoing spread of COVID-19 in Arkansas and believes that she would be putting others at risk if she exercised her right to vote in person.

5. Plaintiff Mary Cantwell is a citizen of Pulaski County, Arkansas. She is retired. Ms. Cantwell voted absentee in the 2020 general election because, as a senior, she must limit her potential exposure to COVID-19 and believes that she would put herself and others at risk by voting in person.

6. Defendant John Thurston is the duly-elected Secretary of State of Arkansas. Secretary Thurston is the state of Arkansas's chief election official. In that role, he is charged with

2

administering the provisions at issue in this action, and doing so in compliance with the Arkansas Constitution and state law. Secretary Thurston also serves as the Chairman of the State Board of Election Commissioners. He is being sued solely in his official capacity as Secretary of State and Chairman of the State Board of Election Commissioners.

7. In addition to Secretary Thurston, Defendants Sharon Brooks; James Harmon Smith, III; Bilenda Harris-Ritter; Charles Roberts; William Luther; and James Sharp are sued in their official capacities as members of the Arkansas State Board of Election Commissioners (collectively, including Secretary Thurston, "Election Commissioners"). In their role as members of the Arkansas State Board of Election Commissioners, the Election Commissioners have the authority to:

   a. Conduct statewide training for election officers and county election commissioners;

   b. Monitor all election law-related legislation; and

   c. Formulate, adopt, and promulgate all necessary rules to assure even and consistent application of voter registration laws and fair and orderly election procedures.

8. This action is brought as a declaratory judgment under Ark. Code Ann. § 16-111-101, *et seq.* and Arkansas Rule of Civil Procedure 57. Plaintiffs also seek preliminary and permanent injunctions under Arkansas Rule of Civil Procedure 65. Plaintiffs seek a declaratory judgment that the arbitrary deadline for counting absentee ballots imposed by Ark. Code Ann. § 7-5-416, violates the Arkansas Constitution, both facially and as applied to Plaintiffs. Therefore, Plaintiffs seek a declaration of their rights, status, or legal relations pursuant to Ark. Code Ann. § 16-111-102.

9. Plaintiffs have satisfied the requirements set by Ark. Code Ann. § 16-111-111(a). Concurrent with the filing of this action, Plaintiffs have served a copy of this Complaint on the Arkansas Attorney General.

10. This Court has subject matter jurisdiction under Amendment 80 to the Constitution of Arkansas and personal jurisdiction over the Defendants under Ark. Code Ann. § 16-4-101(B). Venue is proper in this Court pursuant to Ark. Code Ann. § 16-60-103 and Ark. Code Ann. § 16-60-104.

## FACTS

11. Arkansas law permits a qualified voter to vote absentee if they: (1) will be unavoidably absent from their voting place on election day; or (2) cannot attend the polls on election day because of illness or physical disability. Ark. Code Ann. § 7-5-402.

12. In a typical election year, thousands of voters in Arkansas's more populous counties vote absentee. In 2016, for example, 4,653 voters in Pulaski County cast absentee ballots. In 2012, that number was 4,881.

13. 2020 is not, however, a typical year.

14. On August 7, 2020, Governor Asa Hutchinson entered an Executive Order addressing several critical issues related to the effect the ongoing COVID-19 pandemic would have on the upcoming general election (the "Executive Order"). *See* Exec. Order No. 20-44 (available at https://governor.arkansas.gov/images/uploads/executiveOrders/EO_20-48.pdf). In so doing, the Governor suspended portions of the Absentee Ballot Statute, providing election officials with more time to process (but not count) absentee ballots. The Governor also established that qualified voters concerned about exposure to COVID-19 were "unavoidably absent" for the purposes of Ark. Code Ann. § 7-5-402 and could vote absentee. *See* Exec. Order No. 20-44.

4

15.     As a result of the Governor's prudent action, the number of requests for absentee ballots has been dramatically higher in 2020 than in previous years. Each county clerk maintains a daily record of the number of absentee ballots sent and returned. According to the Arkansas Secretary of State, approximately 118,000 Arkansans requested absentee ballots as of October 20, 2020. Of that number, more than 70,000 Arkansans have already submitted their absentee ballots with two weeks still to go until election day. By comparison, approximately 30,000 Arkansans voted absentee in 2016. And County Clerks continue to receive requests, as voters can request absentee ballots up to seven days before election day. Ark. Code Ann. § 7-5-404(a)(3).

16.     In Pulaski County, 10,039 registered voters requested an absentee ballot as of August 27, 2020, a *550 percent increase* from the same date in 2016. By October 19, 2020, the number of absentee ballot requests in Pulaski County alone rose to 24,586, with 13,736 voters already having returned their completed absentee ballots to the Pulaski County Clerk's office.

17.     Absentee voting is critical to slowing the spread of COVID-19 in Arkansas, as COVID-19 continues to pose a dire threat to Arkansas voters. On October 13, 2020, by Executive Order 20-48, Governor Hutchinson recognized the ongoing state of emergency in Arkansas due to the COVID-19 pandemic. As of October 16, 2020, there have been 92,117 confirmed cases of COVID-19 in the state, and the disease has killed more than 1500 Arkansans. *See* Governor of Arkansas, COVID-19 Update (Oct. 16, 2020), https://governor.arkansas.gov/news-media/press-releases/governor-hutchinson-provides-todays covid-19-update-101620. On October 15, 2020, Arkansas saw its highest single-day spike in COVID-19 cases, with 1,278 people testing positive. *See Arkansas Reports Record 1,278 Coronavirus Cases Amid Surge,* TIMES RECORD, Oct. 16, 2020 (available at https://www.swtimes.com/news/20201016/arkansas-reports-record-1278-coronavirus-cases-amid-surge). Pulaski County has been particularly hard-hit by COVID-19. As

5

of October 17, 2020, there have been recorded 10,537 confirmed cases of COVID-19 in Pulaski County resulting in 179 deaths. *See* Arkansas Department of Health, COVID-19 County Data, https://www.healthy.arkansas.gov/programs-services/topics/covid-19-county-data (last visited Oct. 17, 2020).

18. In order to combat the spread of COVID-19, the CDC has specifically encouraged states to "offer alternative voting methods that minimize direct contact and reduce crowd size at polling locations," including mail-in voting. Ctrs. For Disease Control & Prevention, *Considerations for Election Polling Locations and Voters* (June 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html.

19. According to the CDC, "The best way to prevent illness is to avoid being exposed to this virus." *Id.* Additionally, the CDC has cautioned that "keeping distance from others is especially important for people who are at a higher risk of getting very sick." Ctrs. For Disease Control & Prevention, *How to Protect Yourself and Others* (Sep. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html. Older adults are at higher risk for getting severely ill and dying from COVID-19. Ctrs. For Disease Control & Prevention, *Older Adults* (Sep. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. "In fact, 8 out of 10 COVID-19-related deaths reported in the United States have been among adults aged 65 years and older." *Id.*

20. Ms. Wince and Ms. Cantwell voted absentee to protect their own health and the health of those within their community.

21. The process for casting an absentee vote is as follows. County Clerks deliver absentee ballots and accompanying materials to all qualified, registered voters who properly

6

applied to vote absentee. Ark. Code Ann. § 7-5-409. The voter marks their ballot, places it in an envelope provided by the County Clerk (the "inner envelope"), and seals the envelope. Ark. Code Ann. § 7-5-412(a). The voter then places the sealed inner envelope, an executed voter statement, and a verification of voter registration in another envelope (the "outer envelope"), which the voter then delivers to the county clerk. Ark. Code Ann. § 7-5-412(a).

22. Election officials then use a two-step process for processing and counting absentee ballots.

23. At the first step, election officials for absentee ballots ("absentee officials") meet publicly to open the outer envelope to confirm that it was submitted by a qualified voter. Ark. Code Ann. § 7-5-416. An absentee official opens each outer envelope to verify its contents. Ark. Code Ann. § 7-5-416(b)(1). If the outer envelope contains all required materials, the absentee officials cross check the name and information provided on the voter statement with information provided on the voter's absentee ballot application. If there are no challenges to the ballot, the absentee officials place the sealed inner envelope in the ballot box without opening the envelope or marking it in any way. Ark. Code Ann. § 7-5-416(b)(1).[1]

24. In a typical election year, absentee officials are prohibited from beginning this first step until the Tuesday before the election. Ark. Code Ann. § 7-5-416(a)(1). The Executive Order, however, permits absentee officials to begin the first step of the process up to 15 days prior to election day. *See* Exec. Order No. 20-44, at 4. The Governor made these changes specifically "to address an anticipated increase in absentee voting at . . . the November 3, 2020 General Election." *See* Exec. Order No. 20-44, at 4.

---

[1] If there are issues with the materials provided in the outer envelope, absentee officials must take certain steps to determine if the vote should be counted. Ark. Code Ann. § 7-5-416(b)(1). Those procedures are not at issue in this action.

25. The second step is counting the processed absentee ballots. Ark. Code Ann. § 7-5-416(b)(1) provides that "when all of the inner envelopes containing the ballots have been placed in the ballot box, the ballot box shall be shaken thoroughly to mix the ballots" and "the ballot box shall be opened and the ballots canvassed and counted."

26. While the second step appears relatively straightforward, there are significant issues presented by the statute.

27. The Absentee Ballot Statute prohibits absentee officials from opening the inner envelope and beginning to count absentee ballots until 8:30 a.m. on election day. Ark. Code Ann. § 7-5-416(a)(1). Yet absentee officials must also finish counting *all* absentee ballots "prior to the closing of the polls on election day." Ark. Code Ann. § 7-5-416(a)(5)(A); *see also* Ark. Code Ann. § 7-5-416(d) ("It is the intent of this section to require the election officials for absentee ballots to meet and process, canvass, and count absentee ballots according to this section prior to the closing of the polls on election day."). In Arkansas, the polls close at 7:30 p.m. *See* Ark. Code Ann. § 7-5-304(a) ("The polls shall be opened at 7:30 a.m., and they shall remain open continuously until 7:30 p.m."). That gives absentee officials less than twelve hours to open every inner envelope and count every absentee ballot (on top of whatever other responsibilities they have on election day and regardless of whether voting machines malfunction).

28. If that sounds impossible, that is because it is. According to Susan Inman, who served as director of elections for the Arkansas Secretary of State and is a former member of the Arkansas State Board of Election Commissioners, in the decades she has worked on elections in Arkansas, there "were always uncounted absentee ballots at 7:30 pm on election night" and it will be "impossible for election officials to count every absentee ballot before the polls close" this year,

"[p]articularly considering the dramatic increase in absentee voting due to COVID-19." *See* **Inman Affidavit, attached and incorporated as Exhibit A to the Complaint.**

29. Despite recognizing that absentee officials need additional time to process absentee ballots due to the "anticipated increase in absentee voting at . . . the November 3, 2020 General Election," the Executive Order made no changes to the deadlines for actually counting absentee ballots. *See* Exec. Order No. 20-44, at 4.

30. Making matters worse, while it is already impossible to meet the less than 12-hour deadline for counting all absentee ballots, the way the Absentee Ballot Statute is drafted makes it impossible for absentee officials to count *any* absentee ballots before polls close.

31. While the statute states that absentee officials cannot begin opening inner envelopes and counting absentee ballots before 8:30 a.m. on election day, it also states that absentee officials cannot begin counting absentee ballots until "*all of the inner envelopes* containing the ballots have been placed in the ballot box." Ark. Code Ann. § 7-5-416(b)(1)(M) (emphasis added).

32. Yet the statute also provides that absentee votes delivered by mail or by the absentee voter's "designated bearer, administrator, or the authorized agent" must be accepted so long as the county clerk receives the ballot "*not later than 7:30 p.m. on election day.*" Ark. Code Ann. § 7-5-411(a)(1) (emphasis added).

33. Election officials cannot, therefore, begin counting absentee ballots under the statute until after the polls close at 7:30 p.m. on election day, as they must accept any otherwise valid absentee ballots received by the County Clerk up to the time polls close.

34. Yet the statute also provides that all absentee ballots must be counted *before* the polls close. Ark. Code Ann. § 7-5-416(a)(5)(A); Ark. Code Ann. § 7-5-416(d).

9

35. Accordingly, the Absentee Ballot Statute is drafted in such a way no absentee ballots—including Plaintiffs'—can be counted before the deadline set by Arkansas Code Annotated § 7-5-416(a)(5)(A) and Arkansas Code Annotated § 7-5-416(d).

36. The deadline for counting absentee ballots also conflicts with other aspects of the Absentee Ballot Statute.

37. For example, Ark. Code Ann. § 7-5-411(a)(1)(B)(ii) provides that "the absentee ballots of armed services personnel serving in active status shall be counted if received by the county clerk no later than 5:00 p.m. ten (10) calendar days after the date of the election and if the absentee ballots were executed no later than the date of the election."

38. Similarly, "ballots applied for not later than thirty (30) days before the election by qualified electors outside the United States on election day that are signed, dated, postmarked, and mailed by the voters no later than the day of the election and received by the county clerk no later than 5:00 p.m. ten (10) calendar days after the date of the election" are counted. Ark. Code Ann. § 7-5-411(a)(1)(B)(i).

39. This conflict is problematic in that it is, at best, unclear whether ballots properly submitted by armed services members in active duty or qualified electors outside the United States that are received within ten days of the election will be counted. *Compare* Ark. Code Ann. § 7-5-411(a)(1)(B) (providing that the ballots should be counted); *with* Ark. Code Ann. § 7-5-416(a)(5)(A) (providing that they should not).

40. The conflict also underscores that the deadline for counting Plaintiffs' absentee ballots is completely arbitrary and unreasonable. There is no reason to continue counting ballots for certain groups of people that arrived ten days after the election while refusing to count Plaintiff's ballots, which arrived before election day.

## COUNT I: REQUEST FOR A DECLARATORY JUDGMENT

41. Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

42. Plaintiffs' rights, status, and other legal relations are affected by a question of construction under the Arkansas Constitution, Arkansas Code Annotated § 7-5-411, and Arkansas Code Annotated § 7-5-416, and Plaintiffs hereby seek a declaration of rights thereunder pursuant to Arkansas Code Annotated § 16-111-102.

43. Article III, Section 1 of the Arkansas Constitution provides, in relevant part that any qualified voter who is lawfully registered may vote in an election in Arkansas so long as they "comply with all additional laws regulating elections necessary for his or her vote to be counted."

44. Article III, Section 2 provides further that "no power, civil or military, shall ever interfere to prevent the free exercise of the right of suffrage; nor shall any law be enacted whereby such right shall be impaired or forfeited, except for the commission of a felony, upon lawful conviction thereof."

45. Under Arkansas law, absentee officials must count the absentee vote of a qualified voter (who otherwise complies with state law) so long as his or her ballot is delivered to the County Clerk by mail or qualified proxy no later than the time polls close on election day. Ark. Code Ann. § 7-5-411(a).

46. Ms. Wince and Ms. Cantwell are qualified, absentee voters who have already submitted their ballots to the Pulaski County Clerk.

47. Arkansas Code Annotated § 7-5-416 prohibits absentee officials from beginning to count absentee ballots until the polls close or, at the very least, no earlier than 8:30 a.m. on election day.

48.     Regardless of whether absentee officials may begin counting absentee ballots at 8:30 a.m. on election day or must wait until polls close, it is impossible for absentee officials to complete counting all absentee ballots by the time polls close, particularly considering the unprecedented increase in absentee voting in 2020 due to COVID-19.

49.     Yet Arkansas Code Annotated § 7-5-416(a)(5)(A) and Arkansas Code Annotated § 7-5-416(d) require that absentee officials complete counting absentee ballots *before* the polls close on election day.

50.     The arbitrary deadline imposed by Arkansas Code Annotated § 7-5-416(a)(5)(A) and Arkansas Code Annotated § 7-5-416(d) is an unconstitutional burden on voters' fundamental rights of suffrage under Article III, Sections 1 and 2 of the Arkansas Constitution, both on its face and as applied to Plaintiffs, because the deadline impairs or forfeits their right of suffrage.

51.     Plaintiffs request that this Court issue a declaratory judgment finding that under the Arkansas Constitution, absentee officials cannot stop counting absentee ballots for the 2020 general election based on the single fact that counting is not complete by the time polls close on November 3, 2020.

52.     Alternatively, Plaintiffs request the Court issue a declaratory judgment finding that the deadline for counting all absentee ballots imposed by Arkansas Code Annotated § 7-5-416(a)(5)(A) and Arkansas Code Annotated § 7-5-416(d) violates Arkansans' fundamental right of suffrage under Article III, Sections 1 and 2 of the Arkansas Constitution.

**COUNT II: REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIONS**

53.     Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

54. The arbitrary deadline imposed by Arkansas Code Annotated § 7-5-416(a)(5)(A) and Arkansas Code Annotated § 7-5-416(d) deprives Plaintiffs of their fundamental right to vote under the Arkansas Constitution. Money damages cannot adequately compensate these constitutional injuries and, absent injunctive relief, the injuries will be irreparable. Accordingly, appropriate injunctive relief and a declaration of the unconstitutionality of the statutes are necessary.

55. Plaintiffs are entitled to a preliminary injunction under Arkansas Rule of Civil Procedure 65 because, for the foregoing reasons, they will likely be successful on the merits and will suffer irreparable harm in the absence of an injunction.

56. The balance between Plaintiffs' irreparable harm and any injury that may be suffered by Defendants weighs heavily in favor of Plaintiffs. Plaintiffs are not asking that this Court change any procedures on voting or impose any additional obligations on Defendants. To the contrary, all Plaintiffs request is that this Court order Defendants to not refuse to count otherwise valid absentee ballots simply because counting was not complete before polls close on November 3, 2020. There is no injury to Defendants.

57. Public interest also weighs in favor of Plaintiffs. Entering a preliminary injunction in this action ***does not*** open the door to accepting absentee ballots that should not be accepted under state law, create voter confusion, or impose any burden on Defendants. A preliminary injunction would not even delay certification of election results, as absentee officials are already required to count absentee ballots received from armed services members and qualified electors outside the United States that arrive up to ten days after election day. Granting a preliminary injunction simply ensures that absentee officials count all properly submitted absentee ballots. That is in the public interest.

58. Accordingly, Plaintiffs ask that this Court enter a preliminary injunction enjoining enforcement of the arbitrary deadlines for completing counting of absentee ballots set by Arkansas Code Annotated § 7-5-416(a)(5)(A) and Arkansas Code Annotated § 7-5-416(d).

59. Pursuant to Arkansas Rule of Civil Procedure 65(c), Plaintiffs request a reduced bond in light of the public interest in this case and the fact that Defendants will suffer no costs or damages as a result of the injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Marquisa Wince and Mary Cantwell pray for the following relief:

1. A declaratory judgment that Ark. Code Ann. § 7-5-416(a)(5)(A) and Ark. Code Ann. § 7-5-416(d) violate the Arkansas Constitution;

2. A preliminary injunction enjoining enforcement of Arkansas Code Annotated § 7-5-416(a)(5)(A) and Arkansas Code Annotated § 7-5-416(d).

3. A permanent injunction enjoining enforcement of Ark. Code Ann. § 7-5-416(a)(5)(A) and Ark. Code Ann. § 7-5-416(d).

Plaintiffs do not seek monetary damages for any of their claims. Plaintiffs seek only the equitable relief described above.

        QUATTLEBAUM, GROOMS & TULL PLLC
        111 Center Street, Suite 1900
        Little Rock, Arkansas 72201
        Telephone: (501) 379-1700
        Facsimile: (501) 379-1701
        jtull@qgtlaw.com
        ckeller@qgtlaw.com

By: _____
    John E. Tull III (84150)
    Christoph Keller (2015145)

*Attorneys for Plaintiffs*

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2020-Oct-26  10:48:46
60CV-20-5954
C06D09 : 4 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
_____ DIVISION

MARQUISA WINCE and                                                           PLAINTIFFS
MARY CANTWELL

v.                                     Case No. _____

JOHN THURSTON, in his official capacity as
the Secretary of State of Arkansas and his
official capacity as Chairman of the Arkansas
State Board of Election Commissioners;
SHARON BROOKS, in her official capacity
as a member of the Arkansas State Board of
Election Commissioners; JAMES HARMON
SMITH, III, in his official capacity as a
member of the Arkansas State Board of
Election Commissioners; BILENDA
HARRIS-RITTER, in her official capacity as a
member of the Arkansas State Board of
Election Commissioners; CHARLES
ROBERTS, in his official capacity as a
member of the Arkansas State Board of
Election Commissioners; WILLIAM
LUTHER, in his official capacity as a member
of the Arkansas State Board of Election
Commissioners; and JAMES SHARP, in his
official capacity as a member of the Arkansas
State Board of Election Commissioners                                        DEFENDANTS

## AFFIDAVIT OF SUSAN INMAN

I, Susan Inman, first being duly sworn, upon oath of personal knowledge state:

1. My name is Susan Inman. I was born and raised in Arkansas and currently reside in Pulaski County.

2. I have been involved in running elections in Pulaski County since 1994. I served as the Pulaski County Election Director from 1994-2000. From June 2000 to February 2003, I served as the director of elections for the Arkansas Secretary of State. After leaving the Secretary


EXHIBIT A

of State's Office, I returned to service as the Pulaski County Election Director until retiring from the post in February 2009. From 2011 to 2013, I served as an appointed member of the State Board of Election Commissioners. I was also elected as a member of the Pulaski County Board of Election Commissioners in 2012 and served in that role until August 2013, when I resigned to run for Secretary of State.

3. In addition to these professional responsibilities, I founded and was the first president of the Arkansas County Election Commissions Association. I continue to volunteer with a number of organizations involved in voter advocacy. I am also currently volunteering as a poll watcher in Pulaski County.

4. I have first-hand knowledge with how elections are conducted in Arkansas and how they have been conducted in the past. That includes how absentee ballots are processed and counted.

5. In Arkansas, voters deliver absentee ballots to their respective county clerk's office. When the clerk's office receives an absentee ballot, it stamps the outer envelope as being received on that date and records the ballot in the voter registration system. The clerk's office attaches a copy of the voter's application for an absentee ballot to the outside of the envelope, then places the envelope in a sealed box for delivery to the county election commission.

6. In a typical year, the sealed boxes containing absentee ballots are delivered to county election commissions no earlier than the Tuesday before election day, which is when the election commissioners are permitted to begin canvassing the absentee ballots. To canvass an absentee ballot, an election official opens the outer envelope and compares the information provided inside with the information on the voter's application for absentee ballot (which the

2

county clerk's office attached to the outer envelope). If there are no irregularities, the official places the sealed ballot in another ballot box that remains sealed until election day.

7.     If the election official finds anything irregular with an absentee ballot during the canvassing process, the ballot is treated as a provisional ballot to be addressed by the election commission on election day. Each provisional absentee ballot must be reviewed by three election commissioners. In my experience, election commissioners frequently do not review provisional absentee ballots until after the polls close. This year, the Pulaski County Election Commission is not convening until 9:00 pm on election night to begin reviewing provisional absentee ballots. Provisional absentee ballots often require additional verification by the county clerk that may push a decision on the provisional ballot to the day after the election or even beyond.

8.     Due to COVID-19, Governor Hutchinson issued an Executive Order permitting election commissions to begin canvassing absentee ballots earlier this year. Pulaski County and several of the larger counties started canvassing the ballots on October 19, the earlier date allowed by the Executive Order. Some counties, however, have not started canvassing absentee ballots. For example, Jefferson County will not begin to canvass absentee ballots until 3:00 pm the day before the election.

9.     Under Arkansas law, election officials cannot begin counting absentee ballots until election day. In my decades of involvement with elections in Arkansas, there were always uncounted absentee ballots at 7:30 pm on election night.

10.    Particularly considering the dramatic increase in absentee voting due to COVID-19, it is impossible for election officials to count every absentee ballot before the polls close.

Further affiant sayeth not.

3

The foregoing is true and correct to the best of my knowledge, information, and belief.

*Susan Inman*
SUSAN INMAN

## ACKNOWLEDGMENT

STATE OF ARKANSAS  )
                    ) SS.
COUNTY OF PULASKI   )

Subscribed and sworn to before me this 22nd day of October, 2020.

My commission expires:

June 13, 2025

*Kathy A. Wycoff*
Notary Public

KATHY A. WYCOFF
NOTARY PUBLIC
Pulaski County, Arkansas
My Commission Expires June 13, 2025
Commission # 12690121

4